First case, George Pratt v. Workers' Compensation Commission, 4100669. Counsel, please. Good morning, Your Honors. May it please the Court, Counsel, my name is Roman Thiemer. I represent the plaintiff, Appellant George Pratt. We've seen you for a while, haven't we? Not since yesterday. There's a number of issues in this case, the most important of which are whether or not it was against the manifest way to the evidence for the commission to fail to find a causal connection between Mr. Pratt's right middle trigger finger and bilateral carpal tunnel syndrome. A couple of issues dependent on those determinations are medical and temporary total disability. I will address what I believe is our strongest argument for reversal first. The commission's decision awarding no benefits for Mr. Pratt's right middle finger was against the manifest way to the evidence. Under the International Harvester case and the line of cases cited therein, an injury brought about by the treatment of another work-related injury is deemed pensable. That's not a second specific accident, but rather, in Fermi, the commission had found that a subsequent accident brought about by treatment of the first constitutes one injury. The commission's determination was affirmed by the appellant court. The arbitrator in this case found no notice as to the October 1, 2003 accident date. That particular finding was reversed on appeal due to the defendant's acknowledgment that notice was not in dispute in that case. Neither was causal connection with respect to the right ring finger. Wasn't there a substantial gap? Wasn't there some kind of a 22-month gap after the alleged date of accident? And until there was a 7 months after that where you last worked for the employer? Wasn't there a substantial gap between the accident and the symptoms complained of? There was a substantial gap between the alleged date of accident and the first time Mr. Pratt went and sought treatment for his injury. Yes, there was. Doesn't that weigh in the analysis? I don't believe it does. First of all, with respect to the right ring finger, it's not in dispute. That portion of the claim isn't before this court today. With respect to the middle finger, the gap in treatment, I don't believe does weigh into the analysis. Our theory of why the ring finger should be found a part of the October 1, 2003 accident was brought about by the treatment to the middle finger. Trigger finger was brought about by the treatment to the right ring finger. It's a treatment injury theory that we're presenting today. Do you have a medical opinion that supports that? I believe we do, Your Honor. Dr. Kaplan's report, heavily relied on by the defense, I believe supports our position. Now, Dr. Kaplan does not issue any causal opinion that says the middle finger is not related. In fact, what he says in his deposition testimony is that the treatment to the right ring finger could have caused the subsequent injury and treatment on the right middle finger. I must acknowledge that Dr. Kaplan's opinion is couched in terms of could have. And I'm mindful of Justice Hoffman's comments yesterday as to opinions issued couched in could have terms and the relation to the proximate cause standard. Even so, this is the only medical opinion introduced in this case that addresses the treatment injury theory. There's nothing else. Did Dr. Mushtaq help you? There is no opinion from Dr. Mushtaq with respect to that in the record, Justice. I do not believe. I thought he found both hands normal. Dr. Mushtaq did refer Mr. Pratt on to Dr. Bovici, who then did a surgery. So, I am not familiar with Mushtaq's actual opinion, but I don't believe he was saying that both hands were normal if he's referring the claimant to a specialist who ultimately does surgery on that condition. Now, again, the only medical opinion that addresses the possible causal link between the treatment to the ring finger and the trigger finger that developed in the middle finger is Dr. Kaplan. Again, unfortunately, it is couched in terms of could have, but because there is no other evidence in the record that addresses this theory, I believe it was against the manifest way to the evidence for the Commission to not find a causal connection here. You said an international harvester in support of your argument, correct? I did, yes. Wasn't that a case where the Supreme Court and this Court respectively affirmed the judgment of the Circuit Court confirming the Commission's decision? Isn't that the opposite? It was, Your Honor, and I think this case is a little different because of the fact that the only medical evidence that was related to the treatment injury theory was Dr. Kaplan's opinion that the treatment and surgeries on the ring finger could have caused the problems in the middle finger. Well, how does international harvester help you? Because, as I said, it was an affirmance of the Commission's decision that it was not against the manifest way to the evidence. Here, you're seeking the opposite. You want us to overturn the Commission. Well, Your Honor, I'm citing international harvester. I believe it was cited in our brief for the proposition that where a work injury itself causes a subsequent injury, the chain of causation is unbroken. We're citing international harvester for a proposition of law. If there are factual differences between these two cases and the outcome was the opposite of this case, I still believe that that proposition of law does help us in this case. The defendant, in their brief, alleges that Dr. Kaplan told Mr. Pratt that the right middle finger injury was not related. This is nowhere to be found in the record. He did say that, admittedly, with respect to the carpal tunnel syndrome. Well, on the right hand, because that was the only carpal tunnel he knew about, but he did not issue an opinion or give any testimony that he ever told Mr. Pratt that his right middle finger condition was unrelated to his work or, more importantly, was unrelated to the treatment on the right ring finger. Dr. Kaplan did testify in his deposition that it was more probable that the onset of right middle trigger finger symptoms was due to something other than Mr. Pratt's work. This supports our theory rather than undermines it. It was, in fact, caused by something other than Mr. Pratt's work activities. It was caused by the treatment to his ring finger. I believe that's what the evidence clearly shows, and the decision of the commission to the contrary was against the manifest way to the evidence and should be reversed. Now, as I earlier acknowledged, Dr. Kaplan does give an opinion in terms of could have. Obviously, I would prefer that he gave an opinion in this case in terms of did or it was more probable than not. However, I have to work with the record that I have, and I believe given that's the only medical opinion that addresses this issue, it was against the manifest way to the evidence for the commission not to find a causal link. Are you also challenging the commission's finding that the left carpal tunnel syndrome was not causally related to the work accident? I am, Your Honor, and the left carpal tunnel syndrome, I believe there's also a strong argument that it was caused by overuse of the left hand following the incapacitation to the right hand. We have, there is an opinion in the record from Dr. Fletcher who clearly indicates that he believes that's the case. He hadn't worked, though, as I understand it. He hadn't worked for 21 months when he went in and complained that he had pain in both hands. That's almost a two year gap. That's correct, Your Honor, but for the vast majority of that two years, his right hand was incapacitated due to the multiple surgeries and treatment he was having on that hand. That's our theory there, is that due to the overuse of the left hand during that whole period of time… But he wasn't working. That's true. How is it connected to his job? Well, I think that, respectfully, I think that's immaterial, where the right hand is incapacitated due to a work injury… And then he's off work? And then he's off work, and he still has to use the left hand for activities of daily living and everything else that he does. Did they make some kind of inference about the calluses on his hands, and apparently he's been doing a lot of things with them? Well, Your Honor, I believe that there was some evidence that his hands were calloused, and I think that can be easily explained by the fact that this gentleman was a union electrician for over 30 years, intensively using his hands. Now, granted, at the time that they noticed the calluses of the hands, he hadn't been working for some time. He hadn't worked for two years, had he? Yes, but there's no opinion in the record that the callousing of the hands would go away in that time period. I've seen nothing to that effect. Was there any evidence in the record as to what he did for a living, wasn't he a farmer? For a living, a farmer? Yeah, what did he do for a living? He was a union electrician. That's what he's done for the past 30 years. 13 of those years he was employed by Respondent. We're talking about hand-intensive work on a repetitive basis. What about the two years he was also? Any evidence as to what he was doing, what activities? Well, there is some evidence in the record that he did some yard work, but I believe that the evidence clearly shows that that was pretty limited. Now, the defendant seems to indicate that he believes this was very intensive, a lot of yard work, that he had a 13-acre house out in the country, but if you look at the testimony of Mr. Pratt, it's clear that he doesn't care for that entire property. The amount of raking and things that he does, he only does it as needed to clear off his drive. So your theory would be if you have an injury to one isolated part of your body and then you're off work, anything that happens after that the employer is responsible for, obviously. That's not my theory, Your Honor. I'll try to do a little bit of job explaining that. What I'm arguing is where one side is incapacitated due to a work injury, the fact that the overuse comes about outside of the work, outside of the employment, I don't believe is material. As long as there's medical evidence that supports that that condition on the left side was caused by overuse due to the incapacitation of the other side, when the incapacitation was caused by a compensable work injury, I think, yes, that is a compensable thing. Did the commission think he was credible? The commission didn't make a finding as far as Mr. Pratt's credibility. Nothing explicit. And I don't think you can read that into the commission's decision either. May I ask you a question? Really, your appeal is in the case 06-WC-33101, is that correct? Yes. But there was a companion case, and it was 08-WC-22644. Yes, Your Honor. Now, I have the decision in that case, and it's much like the one yesterday. I'm a little bit befuddled by this. The commission says the commission finds petitioner failed to prove accident that arose out of in the course of his employment. Claims for benefit are denied. The commission further remands the case to the arbitrator for further proceedings to determine TTD and permanent disability. Does that make any sense to you? Your Honor, I believe, first of all, that's just a boilerplate term as far as the remand. Do they ever read this stuff before they sign it? It's a good question, Your Honor, one that I'm unable to answer as I'm unfortunately not. Go ahead. This is the second one in two days I've seen this. It confused me as well. Your Honor, I would just like to point out that we're not appealing that decision. I believe it was correctly decided based on no employer-employee relationship. We take no issue with that decision. My argument for the left carpal tunnel syndrome being clearly compensable and the failure to find a causal connection being against the manifest way to the evidence is based on the overuse caused by the incapacitation of the right side. It's that simple. We have a medical opinion that supports that. There's no other medical evidence that undermines that theory. Nothing. Dr. Bender does not issue an opinion in respect to carpal tunnel syndrome and Dr. Kaplan acknowledged that overuse can cause trauma to the other side and that he's seen it in previous cases. In conclusion, the manifest way of the medical evidence supports a causal connection between Mr. Pratt's left-hand carpal tunnel syndrome and the original October 1st. Did Dr. Kaplan talk to the claimant and tell him what he thought about it? He did, Your Honor, but he could not have issued an opinion as to the left side. Dr. Kaplan, if you read his deposition testimony, only knew about carpal tunnel on the right side. Therefore, he could not have told Mr. Pratt, I don't believe your left carpal tunnel is related to your work. He didn't know it existed. So I think that Dr. Kaplan's opinion does not address that, Justice. In conclusion, I do believe that the left carpal tunnel syndrome was causally connected. The commission's determination to the contrary was against the manifest way of the evidence and should be reversed. There's also the issue of the right carpal tunnel syndrome. Justices, I will rely on our brief on that issue. I offer no argument unless you have questions. Thank you, counsel. Counsel, please. May it please the Court, my name is Joe Wynn, and I represent the ability in this case, Mr. Elector.  First of all, with regard to Dr. Kaplan not relating the right middle finger condition to work, he specifically testified that he did not relate it to this man's work. In Volume 3, page 75, he said that the condition of trigger finger doesn't exist until symptoms begin, and this didn't happen until the petitioner was off work. Dr. Kaplan started treating this gentleman in May of 2005 on referral from Dr. Bathishi. Backing up a little bit, they're alleging a date of accident of October 1, 2003. This man did not seek medical attention until January of 2005. At that time, he was seen by Dr. Mushtaq, who then referred him to Dr. Bathishi. Bathishi sees him for the first time in February of 2005, and the petitioner admitted that prior to January 28, 2005, when he was first seen for medical treatment, and again that was with Mushtaq, he did not have any problems with either of his hands or the right middle finger. Now remember that we're talking about four conditions here, both hands, the right ring finger, and the right middle finger. We've accepted responsibility for the right ring finger, and the commission has ruled that we are responsible for the right ring finger. So that narrows it to both hands and the right middle finger. By the petitioner's own testimony, he admitted that prior to the first time that he saw any doctor for his condition of his right ring finger or any other condition, that he wasn't having any problems with either of his hands or the right middle finger. He then proceeds to treat with, he sees Mushtaq in January of 2005. He's referred to Dr. Bathishi in February of 2005. Bathishi treats him from February of 2005 until sometime in May of 2005. And during that period of time, he performed a surgery on the right ring finger for what the finger we're responsible for. But during that entire period of time between February of 2005 and May of 2005, when Bathishi treated him, he didn't work. Bathishi then, because of the bad results from the first surgery on the ring finger, then refers him to Dr. Kaplan at the Indiana Hand Surgery Center. Dr. Kaplan then sees him for the first time in May of 2005. And as of May the 27th of 2005, writes a script that he is to remain off work. He then proceeds to perform a second surgery on the ring finger, the one we're responsible for. And it wasn't until August the 8th of 2005 that this gentleman made his first complaint of his right middle finger. With regard to the ring finger then, after the surgery in June of 2005 that was performed by Dr. Kaplan, on August the 29th of 2005, Kaplan releases him back to work. And then as of September the 19th of 2005, he says he's at MMI and he doesn't need any further medical treatment with regard to the right ring finger. The commission has ruled that we have a responsibility to pay for all benefits for this gentleman, for the right ring finger, up through September the 19th of 2005. And we've accepted that responsibility. However, Kaplan said that because this man didn't make his first complaint about the right middle finger until August of 2005, it wouldn't be work-related because he hadn't been working since sometime before February of 2005. All right, so counsel, so you're attacking his argument on two levels. One is the failure to prove or to establish a causal connection between the work accident and the condition 21 months later. What about his other position? Do you accede to the correctness of his position on the left carpal tunnel syndrome, that because he was injured and incapacitated in his right hand, ergo as a direct and proximate result of that, he had to overuse his left hand, therefore the employer should be responsible for the left carpal tunnel syndrome and this overuse theory. Do you accede if that's legally correct? No. Why not? Well, for one thing, Dr. Kaplan testified that during the entire period of time that he treated this gentleman, which started in May of 2005 and ended five surgeries later, sometime in 2006 or 2007, this man never made a complaint of left carpal tunnel problems. All right, so that's a failure of proof argument. What about, is there a sound legal theory on that, that the employer is ultimately responsible for what happens as a result of an injury to one part of the body, any adjustments you have to make? I think there might be in the event that this man had been working at the time that there was the onset, but we're not talking about that situation here. We're talking about a man that had been off work from February, at least as of February of 2005, until his first complaint in August of 2005 and was not back to work until sometime after August the 29th of 2005. He then proceeds to work for a five-month period from August the 29th of 2005 until February the 23rd of 2006. As of February the 23rd of 2006, he was laid off and he never worked for this company again. Sometime after that, he then starts complaining about both hands. And, you know, for some reason, counsels chose to pick a second accident date in 2007, which the commissioners ruled, you know, they didn't approve an accident on. But again, if there's no accident in 2007, which there's been a ruling on and that issue is not before the court today, then we go back to the other accident in October of 2003. And what they're asking you to do is to somehow fashion an accidental injury that resulted in bilateral carpal tunnel syndrome that occurred in 2003 for which there were no complaints until sometime in 2006 or 2007. What about a more subtle argument you could make? Well, you know, that's true because when he left in 2003, nothing had manifested itself because he hadn't engaged in overuse over a period of a couple of years now as a result of this incapacity of the right hand. Now, two years later, my left hand is hurting because I had to overuse it and it took two years to manifest itself. What about that argument? Well, he may have overused it, but he didn't overuse it at work. And my contention is that... Does it make any difference whether he was at work or if it was an overuse? If you have a claimant who blows out his right knee and as a result he walks with a limp and that causes a problem with his left knee later, isn't that contensible? Well, that might be true, Your Honor. I've seen cases like that. That might be true, Your Honor, but... So what's the difference? If we go to the date of accident of 2003 for which he's alleging that there was an onset of bilateral carpal tunnel syndrome, by his own testimony prior to his first visit with a doctor in January of 2005, he was not having any complaints with either hand or the right middle finger. So, and then from that point on, he didn't work by his own testimony from February of 2005 until he was released to return to work in August of 2005. And after that point, there was only a five-month gap where he did work. All right, so what you seem to be saying in essence in response, if I can call out the essence of your argument, is, look, he might have a legitimate legal theory, but the evidence doesn't support it. Exactly. Is that in essence what you're saying? Yes, Your Honor. I didn't do a very good job of that, but that's true. And that's what I'm trying to get at. It's humanly impossible for this to happen. And I will stand on my brief for any remaining argument unless any of the justices have any specific issues or questions on this case that I can attempt to answer. Thank you, counsel. Thank you. Hello. Just very briefly, Your Honors, I'd just like to address the comment that the opposing counsel just made with respect to the evidence not supporting our theory. Well, the only evidence that there is with respect to the left carpal tunnel syndrome is Dr. Fletcher's opinion that it's caused by overuse because of the incapacitation of the right member. He's pointed to no other evidence in the record that conflicts with that theory. Again, Dr. Kaplan's opinion that the carpal tunnel was not related to his work. First of all, it's immaterial to an overuse theory because he's talking about his work activities as an electrician over the past 30 years. But Dr. Mersteck found both hands normal. Well, he did, Your Honor, but obviously they were not. He got... Perfect. If he said they were, can they believe him? Well, I think it begs the question, why then was he referred to a specialist for further care and treatment with respect to his right hand and the condition he was having in his finger? Now, I'm not alleging that Mr. Pratt had symptoms of carpal tunnel syndrome or an onset of carpal tunnel syndrome in 2003. That's not the facts. The facts is his carpal tunnel syndrome did not manifest until 2007, as opposing counsel has correctly pointed out. My argument is that does not matter because it was caused by the overuse to the opposite member. The only medical opinion touching on that issue is Dr. Fletcher's opinion. Dr. Kaplan did not issue an opinion with the left hand. He couldn't have. He didn't know he had it. He did not know he had carpal tunnel in the left hand. That's clear from the record. It's in the deposition testimony. That being considered, I think that the only evidence does show that overuse caused the trauma to the left hand. The only evidence in the record. And that's why we believe the commission's decision denying benefits for the left carpal tunnel syndrome was against the manifest way of the evidence. Nothing further. We'll take the matter under advisory.